UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
v. : CR 05-81 L
:
VICTERVO PINA :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Victervo Pina[1] ("Defendant") is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, a hearing was conducted on August 22, 2005. On August 22, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms and conditions of his supervised release. Based on that admission, I find that Defendant has violated supervised release. For the reasons stated herein, I recommend that Defendant be imprisoned for twenty-eight (28) months to be followed by a term of supervised release for sixty (60) months.

**Background**

On February 23, 2000, Defendant appeared before the Honorable Mark L. Wolf, United States District Judge for the District of Massachusetts, after having pled guilty to one count of conspiracy to distribute and possession with intent to distribute heroin and cocaine base, two counts of possession with intent to distribute and distribution of cocaine base, four

---

[1] At the August 22, 2005, hearing Defendant indicated that his true name is Esterlin Javier Moreno-Gomez and that he prefers to be addressed as "Mr. Gomez." In this Report and Recommendation, the court refers to him as Defendant.

counts of possession with intent to distribute and distribution of cocaine and heroin, and one count of possession with intent to distribute and distribution of cocaine base. He was sentenced to forty-four months incarceration, sixty months supervised release, and an $800 special assessment. As special conditions of his supervised release, Defendant was ordered to participate in a substance abuse program as directed by the U.S. Probation Office, and, if ordered deported, he was to leave the United States promptly and was not to return without prior permission of the U.S. Attorney General. Supervised release commenced on May 8, 2001, with an expiration date of May 7, 2006. Defendant was deported from the United States to the Dominican Republic on June 20, 2001. The transfer of jurisdiction to the District of Rhode Island was accepted on March 14, 2005.

On or about June 22, 2005, U.S. Probation Officer David S. Borrelli ("USPO Borrelli") filed a Petition for Warrant for Offender under Supervision (the "Petition"), alleging that Defendant had violated a standard condition of supervised release.

**The Violation**

The Supervised Release Violation Report dated June 22, 2005 (the "Report"), filed in connection with the Petition alleges that Defendant has violated the following condition of supervision in the manner indicated:

**Standard Condition: While on supervised release, Defendant shall not commit another federal, state, or local crime.**

**1.** Defendant committed the offense of illegal reentry after deportation in violation of Title 8, U.S.C. Section 1326(a) and (b)(2), as evidenced by his plea of guilty on May 19, 2005, before Senior U.S. District Judge Ronald R. Lagueux.

As to this violation, Defendant was deported on June 20, 2001, from the United States to the Dominican Republic. In December 2001, Defendant returned to the United States without

the permission of the U.S. Attorney General. On February 2, 2005, Defendant was arrested in Rhode Island under the name Esterlin Moreno-Gomez. He appeared before this Magistrate Judge and was ordered detained. Defendant was indicted on February 9, 2005, and charged with illegal reentry after deportation. On May 19, 2005, Defendant appeared before Judge Lagueux and pled guilty to the one count indictment, and sentencing has been scheduled for September 8, 2005.

**2.** Defendant committed the offense of manufacture, delivery, and possession of a controlled substance, as evidenced by his July 7, 2004, plea in Providence County Superior Court.

As to this violation, on July 1, 2003, patrol officers of the Providence, Rhode Island, Police Department were dispatched to Villa Real Billiards to investigate the sale of alcohol to minors and possible narcotics transactions. Upon entering the business, officers observed Defendant throw a plastic bag containing a white substance behind a video game. The bag was seized and determined to contain twenty-five bags of suspected cocaine. Defendant also had $1,180 in his possession.

On July 7, 2004, Defendant pled nolo contendere to manufacturing, delivering, and possessing with intent to deliver a schedule I/II controlled substance in Providence Superior Court, Docket No. P2/2004-0313B, and was sentenced to eight years full sentence, eighteen months to serve, seventy-eight months suspended with seventy-eight months probation and $968 in assessments.

**Travel**

On June 27, 2005, United States District Judge Mary M. Lisi ordered the issuance of a warrant for Defendant to appear to answer to the Petition. The warrant was executed, and Defendant appeared before this Magistrate Judge on the morning of July 13, 2005. Defendant was advised of the Petition and of the grounds for the alleged violation. Defendant initially indicated that he

wished to waive a violation hearing and admit to the violation. However, when the court read the facts setting forth the grounds for the violation and asked if Defendant agreed with those facts, Defendant equivocated. The court continued the hearing until 2:30 p.m. to allow Defendant to confer further with his attorney.

When the hearing resumed at 2:40 p.m., Defendant's attorney, Mr. Roy, informed the court that Defendant was prepared to admit that he had illegally reentered the United States and that he had pled no contest to a charge of possession of a controlled substance. Although Defendant did not disagree with Mr. Roy's statement, Defendant asked the court why the Government had delayed bringing the violation for such a long time. The court responded that that was a matter which Defendant could discuss with his attorney. Defendant then stated that it was near the one year anniversary of his son's death and that he did not feel he was able to make a decision at that time regarding how he should proceed. Defendant requested a continuance of one or two weeks. The court granted the request for a continuance, but because of scheduling difficulties the matter was put down for hearing on August 15, 2005. It was subsequently rescheduled for a week later.

On August 22, 2005, Defendant appeared and, both personally and through counsel, waived a violation hearing and admitted to the violation. This admission satisfied the court that there was an adequate basis for finding that Defendant had violated the conditions of supervision.

The court then received sentencing recommendations from both the Government and the defense. The Government recommended a sentence at the high end of the guideline range (thirty months), noting that one of the grounds for the violation was the same type of offense for which Defendant had originally received supervised release and also that he had illegally reentered the country. The Government further recommended that Defendant be placed on a period of supervised release for sixty months and

that as conditions of supervised release Defendant submit to deportation and, if he is not deported, he participate in substance abuse treatment as determined by U.S. Probation.

Counsel for Defendant recommended a sentence at the low end of the guideline range and requested that it be made concurrent with whatever sentence Defendant receives on September 8, 2005, for the offense of illegal reentry. In making this recommendation, Mr. Roy noted that Defendant had cooperated with the Government in regard to the original offense and that when Defendant subsequently returned to the Dominican Republic his eleven year old son had been run over and killed by a vehicle. Mr. Roy indicated that Defendant believed this act was in retaliation for Defendant cooperating with the Government.

After listening to defense counsel, the court asked if the Government had any information that the death of Defendant's son was an act of retaliation. Counsel for the Government responded negatively. Mr. Roy stated that he had been provided with some documents in Spanish which pertained to the death of Defendant's son and that these documents were in the process of being translated. Mr. Roy offered to provide copies to the court when the translation was completed, but indicated that the translation process would take several more days. The court gave Mr. Roy until August 30, 2005, to submit these document material. However, the translation process was not completed until September 1, 2005, and the materials were not received by this Magistrate Judge until either that date or the following day.

**Law**

**Statutory Provisions**

Section 3583(e)(2) of Title 18 of the United States Code ("U.S.C.") provides that if the court finds a defendant to be a violator of the conditions of supervised release, the court may extend the term of supervised release if less than the maximum authorized term was previously imposed and may modify, reduce, or

enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Fed. R. Crim. P. relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. In this case, the maximum term of supervised release is life. Therefore, the term can be extended.

Pursuant to Section 3583(e)(3) of Title 18 of the U.S.C., the court may, after considering certain statutory factors set forth in § 3553(a),[2] revoke a term of supervised release and

---

[2] The § 3553(a) factors to be considered in imposing a sentence are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> ....
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> ....
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
>
> (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to

require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Fed. R. Crim. P. applicable to revocation of supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. However, a defendant whose term is revoked under this paragraph may not be required to serve more than five years in prison if the offense that resulted in the term of supervised release was a class A felony. Here the offense was a class A felony. Thus, the maximum period of imprisonment which may be imposed for the violation is five years.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length

---

be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(7) the need to provide restitution to any victims of the offense.

18 U.S.C.A. § 3553(a) (2004).

of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here life), less any term of imprisonment that was imposed upon revocation of supervised release. See id.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation. Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade. In this case, Defendant has committed a Grade A violation.

Pursuant to Section 7B1.3(a)(1) of the U.S.S.G., upon a finding of a Grade A violation, the court shall revoke supervision. Therefore, since Defendant committed a Grade A violation, the court must revoke supervision.

According to Section 7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served

in addition to the sanction determined under § 7B1.4. In this case, there is no outstanding restitution, fine, community confinement, home detention, or intermittent confinement.

Section 7B1.3(g)(2) of the U.S.S.G. provides that where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. See id. (citing 18 U.S.C. § 3583(h)). In this case, the authorized statutory maximum term of supervised release is life. There has not been any term of imprisonment previously imposed for violations of supervised release. Therefore, the court may impose the above-noted statutory maximum, minus the term of imprisonment to be imposed for this revocation.

Pursuant to Section 7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of I at the time of sentencing. The Revocation Table contained in Section 7B1.4(a) of the U.S.S.G. provides that, for a Grade A violation with a criminal history category of I, an imprisonment range of twenty-four to thirty months is warranted.[3]

Section 7B1.5(b) of the U.S.S.G. states that, upon revocation of supervised release, no credit shall be given toward

---

[3] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

any term of imprisonment ordered for time previously served on post-release supervision.

**Discussion**

The fact that after Defendant illegally reentered the United States he engaged in the same type of criminal conduct (possession of controlled substance with intent to deliver) which was the basis for the original sentence and deportation is clearly an aggravating factor. This warrants a sentence at the high end of the guideline range.

Defendant, in exercising his right of allocution, noted that he had cooperated with the Government and suffered retaliation as a result. He stated that all he wanted to do was to take care of his children who were in the Dominican Republic.

The court has reviewed the documents concerning the death of Defendant's son. While they appear to confirm that Defendant's son was struck and killed by a vehicle in the Dominican Republic on July 2, 2004, there is nothing which indicates that this tragic event was a deliberate act or in retaliation for Defendant cooperating with the Government. The documents indicate that the identity of the driver of the vehicle is known and that a civil suit for damages has been initiated against her. While the court sympathizes with Defendant for the loss of his son, I do not find that this circumstance provides a basis to mitigate either ground for violation.

The only factor which favors a sentence other than at the high end of the guideline range is that Defendant waived a hearing and admitted to the violation. Consistent with this Magistrate Judge's practice to make a slight reduction in the sentence to be recommended in such cases, I find that a reduction of two months is appropriate. With regard to the request of defense counsel that the sentence be made concurrent with the sentence to be imposed on September 8, 2005, I find that this determination is most appropriately made by Judge Lagueux.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be sentenced to twenty-eight (28) months imprisonment to be followed by a term of supervised release for sixty (60) months. As special conditions of his supervised release, I further recommend: 1) that if Defendant is ordered deported, he is to leave the United States promptly and not to return without the permission of the Attorney General of the United States; and 2) that, if he is not deported, Defendant shall participate in a program for substance abuse as directed by the United States Probation Officer.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

DAVID L. MARTIN
United States Magistrate Judge
September 8, 2005